UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re

_____

Debtor

Case No. _____

☐ Amended

**Notice of Preliminary Hearing on Motion**
**[*Check One*]**

☐ **For Use of Cash Collateral**

☐ **To Obtain Credit**

YOU ARE NOTIFIED THAT:

1. The undersigned moving party, _____,
   filed a motion [*check one*]

   ☐ for use of cash collateral.

   ☐ to obtain credit.

   The motion is attached and it includes (1) the statement required by Local Bankruptcy Form (LBF) 541.5, Procedures re: Motions for Use of Cash Collateral or to Obtain Credit and (2) the following allegations:

   a. The immediate and irreparable harm that will come to the estate pending a final hearing is:

   b. The amount of [*check one*] ☐ cash collateral ☐ credit necessary to avoid the harm detailed above prior to the final hearing is _____.

2. The name and service address of the moving party's attorney (or moving party, if no attorney) are:

3. An evidentiary hearing on the motion, at which witnesses may testify, will be held as follows:

**541.1 (12/1/2022)**　　　　　　　　　　Page 1 of 2

**Date:**_____     **Time:** _____

**Location:**     Courtroom #_____, _____

      Telephone Hearing [*See LBF 888, Telephone Hearing Requirements*.]

      **Call In Number:**  (888) 684-8852

      **Access Code:**     5870400 for Judge David W. Hercher (dwh)

                                1238244 for Judge Peter C. McKittrick (pcm)

                                  4950985 for Judge Teresa H. Pearson (thp)

                                  3388495 for Judge Thomas M. Renn (tmr)

      Video Hearing. To connect, see www.orb.uscourts.gov/video-hearings.

4. If you wish to object to the motion, you must attend the preliminary hearing, file a written response, which states the facts upon which you will rely, with the clerk at 1050 SW 6th Ave. #700, Portland OR 97204 or 405 E 8th Ave. #2600, Eugene OR 97401, or both attend the hearing and file a written response.

   If the response is filed within three business days before the hearing, notify the judge's chambers by telephone immediately after filing the document, as required by Local Bankruptcy Rule 9004-1(b).

5. I certify that on _____ this notice and the motion were served pursuant to Federal Rule of Bankruptcy Procedure (FRBP) 7004 on the debtor(s), any debtor's attorney, any trustee, any trustee's attorney, members of any committee appointed under 11 U.S.C. § 1102 or elected pursuant to 11 U.S.C. § 705 or its authorized agent (or, if no committee in a chapter 11 case, on all creditors listed on the list filed pursuant to FRBP 1007(d)), any creditors' committee attorney, the U.S. trustee, and all entities with any interest in the cash collateral subject to this motion, whose names and addresses used for service are as follows:

_____
Signature of Moving Party or Attorney                                OSB #

_____
(If debtor is movant) Debtor's Address & Last 4 Digits of Taxpayer ID#(s)

**Timothy A. Solomon**, OSB 072573
   Direct: 971.634.0194
   Email: tsolomon@LLG-LLC.com
**Stephen A. Raher**, OSB 095625
   Direct: 971.867.2440
   Email: sraher@LLG-LLC.com
**LEONARD LAW GROUP LLC**
4110 SE Hawthorne Blvd., PMB 506
Portland, Oregon 97214
Fax: 971.634.0250

   Proposed Counsel for Debtor in Possession

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>**Heritage Specialty Foods, LLC,**<br><br>                Debtor. | Case No. 23-31368-pcm11<br><br>**MOTION FOR AUTHORIZATION TO USE CASH COLLATERAL ON AN INTERIM AND FINAL BASIS** |

       Pursuant to 11 U.S.C. § 363(c), Federal Rule of Bankruptcy Procedure 4001(b), and Local Bankruptcy Rule 4001-1(b), Heritage Specialty Foods, LLC (the "**Debtor**"), hereby moves for entry of an order authorizing the Debtor to use cash collateral on an interim and final basis. This motion is supported by the Declaration of Shane Hendren in Support of First-Day Motions (the "**Hendren Declaration**").

### STATEMENT REQUIRED BY LBF 541.5(5)(b)

       The proposed order granting this motion does not contain any of the "discouraged provisions" listed in section 5 of Local Bankruptcy Form 541.5.

Page 1 of 7 – MOTION FOR AUTHORIZATION TO USE CASH COLLATERAL

LEONARD LAW GROUP LLC
4110 SE Hawthorne Blvd., PMB 506
Portland, Oregon 97214
leonard-law.com

Case 23-31368-pcm11    Doc 19    Filed 06/23/23

## GENERAL BACKGROUND

1. On June 23, 2023 (the "**Petition Date**"), the Debtor commenced the above-captioned case by filing a voluntary petition under subchapter V of chapter 11, title 11 of the U.S. Code (the **"Bankruptcy Code"**).

2. The Debtor is continuing to operate its businesses and property as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108 (applicable via section 1181(a) of the Bankruptcy Code).

3. No trustee or examiner has been requested or appointed.

4. The Debtor is a family-owned manufacturer of small-batch, kettle-cooked foods made from high-quality fresh ingredients. The company specializes in ready-to-eat products including soups, chilis, chowders, entrees, sauces, and marinades. The company's primary sales channels are local and regional retail markets, club stores, and foodservice outlets. Hendren Decl. ¶ 3.

5. The Debtor found a successful market niche as a mid-size producer able to take on projects that were too large for "mom and pop" competitors, but smaller than the larger food manufacturers wanted to take on. Revenues stepped up gradually over the first twelve years of the Debtor's existence, reaching $10.9 million by 2019, and the company was historically profitable during this period. *Id.* ¶ 5.

6. As a result of operational changes driven by the pandemic, and rapid expansion in 2021, the Debtor relocated to new leased premises in 2021, which turned out to be more expensive than anticipated due to inaccurate information provided by the Debtor's new landlord concerning the condition of the property. *Id.* ¶¶ 7-11.

7. In 2022, the Debtor experienced dramatic revenue growth (to $19.5 million from $14.9 million in the previous year), resulting in higher demands on the company's line of credit, which was already strained from use for construction at the new leased premises. The buildup of accounts payable, which began during the Covid years, became truly

Page 2 of 7 – MOTION FOR AUTHORIZATION TO USE CASH COLLATERAL

LEONARD LAW GROUP LLC
4110 SE Hawthorne Blvd., PMB 506
Portland, Oregon 97214
leonard-law.com

Case 23-31368-pcm11    Doc 19    Filed 06/23/23

unmanageable. By the end of 2022, the Debtor's accounts payable had grown from $2.4 million to $3.7 million. As of June 21, HSF's accounts payable (not including amounts due to affiliated entities) were approximately $3.0 million with $1.8 million over 60 days outstanding. *Id.* ¶ 12.

8. The Debtor has a purchase-to-order business model that involves a quick inventory turn and rapid conversion to accounts receivable. It is also a highly seasonal business, with the company typically earning half of its revenue in the last four months of the calendar year. As the Debtor entered its slow season after the beginning of 2023, it became impossible to meet commitments to vendors. Also early in the year, Commerce Bank informed HSF that it wanted to terminate the LOC, which was set to expire on May 31, 2023.. *Id.* ¶ 13.

9. Since Commerce Bank announced its intent to terminate the line of credit, the Debtor has been working diligently to identify alternative financing, reform its operations, and improve its financial management. *Id.* ¶¶ 14-16. This process of planning and analysis has led to the commencement of this chapter 11 case.

10. Now that the Debtor is operating as a chapter 11 debtor in possession, it requires use of cash to maintain its operations and maximize its value as a going concern. *Id.* ¶ 23.

11. Commerce Bank asserts claims against the Debtor based on the following:

    a. A promissory note dated April 9, 2015, and related loan documents (as amended from time to time) in the principal amount of $1,600,000 for the LOC. The LOC currently serves as HSF's sole operating facility. The outstanding balance due on this loan on June 22, 2023, was $1,389,970.41.

    b. A promissory note dated May 25, 2017, and related loan documents, as amended or modified, in the principal amount of $500,000 for a term an amortizing equipment term loan. The outstanding balance due on this loan on June 16, 2023, was $330,397.29.

    c. A promissory note dated November 12, 2021, in the original principal amount of $840,000 increased over time to the principal amount of

Page 3 of 7 – MOTION FOR AUTHORIZATION TO USE
                CASH COLLATERAL

LEONARD LAW GROUP LLC
4110 SE Hawthorne Blvd., PMB 506
Portland, Oregon 97214
leonard-law.com

Case 23-31368-pcm11    Doc 19    Filed 06/23/23

$1,400,000 and related loan documents for an equipment acquisition and term out facility. The outstanding balance due on this loan on June 16, 2023, was $1,182,178.19.

  d. Certain guarantee agreements entered into by the Debtor to secure payment obligations incurred by affiliated entities.

12. To secure the Debtor's obligations on the various loan agreements referenced above in paragraph 11, Commerce Bank's predecessor in interest filed a Form UCC-1 financing statement on April 15, 2015 with the Oregon Secretary of State (the **"Financing Statement"**). The Financing Statement claims a security interest in the Debtor's inventory, chattel paper, accounts, equipment, and general intangibles.

13. Commerce Bank's Financing Statement does not directly claim a security interest in Debtor's deposit accounts or cash (collectively, **"Cash Assets"**). Nonetheless, Debtor's Cash Assets are largely generated by the sale of inventory in which Commerce Bank does claim a security interest. Commerce Bank may then be eligible to claim a security interest in many of the Cash Assets by operation of applicable nonbankruptcy law.

14. The only other entity that may assert an interest in the Debtor's cash collateral is the U.S. Small Business Administration, which filed a Form UCC-1 financing statement on June 9, 2020, therefore would be subordinate to Commerce Bank under applicable nonbankruptcy law..

## JURISDICTION

15. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and District of Oregon Local Rule 2100-2(a). Venue is proper in this district under 28 U.S.C. § 1408. This is a core matter under 28 U.S.C. § 157(b)(2)(A), (M), and (O). The statutory predicate for the relief requested herein is 11 U.S.C. § 363(c).

Page 4 of 7 – MOTION FOR AUTHORIZATION TO USE CASH COLLATERAL

LEONARD LAW GROUP LLC
4110 SE Hawthorne Blvd., PMB 506
Portland, Oregon 97214
leonard-law.com

Case 23-31368-pcm11 Doc 19 Filed 06/23/23

## RELIEF REQUESTED

16. Debtor seeks entry of an order (substantially in the form attached hereto as **Exhibit A**) authorizing it to use cash collateral consistent with 11 U.S.C. § 363(c)(1) and (2) and pursuant to the eighteen-week budget attached hereto as **Exhibit B** (the **"Budget"**), to pay the Debtor's necessary operating expenses including chapter 11 administrative expenses.

17. As set forth in the proposed order, the Debtor's authority to use cash collateral shall be limited to the amounts set forth in the Budget; provided, however, that Debtor may make expenditures in excess of said sums so long as cumulative expenses during the eighteen-week period covered by the Budget do not exceed 10% of the total expenses as set forth in the Budget, tested on a monthly basis. Debtor may exceed the 10% variance cap described in the previous sentence only with the prior written consent of Commerce Bank or by an order of this Court.

18. Additionally, the Debtor requests that the Court schedule: (i) an interim hearing (on an emergency basis) to consider entry of the proposed interim order authorizing use of cash collateral, and (ii) a final hearing to consider entry of a final order authorizing continued use of cash collateral throughout the duration of this case.

## GROUNDS FOR RELIEF REQUESTED

19. The Debtor requires the use of cash collateral to preserve the value of its business as a going concern and to preserve and maintain the assets of the bankruptcy estate. Without access to the cash collateral, the Debtor will not be able to continue operating its business. In fact, its operations would cease within weeks, if not days. This will have an obvious negative impact on the value of the company's assets. Hendren Decl. ¶ 27.

20. It is in the best interest of creditors to allow the Debtor to use Commerce Bank's cash collateral because the use of such funds will allow the continued operation of the

Page 5 of 7 – MOTION FOR AUTHORIZATION TO USE CASH COLLATERAL

LEONARD LAW GROUP LLC
4110 SE Hawthorne Blvd., PMB 506
Portland, Oregon 97214
leonard-law.com

Case 23-31368-pcm11    Doc 19    Filed 06/23/23

Debtor as a going concern, thereby increasing the likelihood of a successful reorganization that can maximize recovery for all creditors. *Id.* ¶ 28.

21. To the extent that the Debtor's cash collateral is subject to a valid and enforceable interest held by Commerce Bank, then Commerce Bank is entitled to adequate protection under section 363(e) of the Bankruptcy Code.

22. Exactly what constitutes adequate protection must be decided on a case-by-case basis. *See In re Energy Partners, Ltd.*, 409 B.R. 211, 236 (Bankr. S.D. Tex. 2009) (citing *MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987)); *In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985). The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in collateral during the reorganization process. *Energy Partners*, 409 B.R. at 236.

23. Forms of adequate protection can include periodic cash payments and replacement liens to make up for any decrease in the value of existing collateral, among other things. *See* 11 U.S.C. § 361(1) and (2).

24. Although the Debtor intends to use the Cash Collateral to fund its operations during chapter 11 and its chapter 11 administrative expenses,[1] the Debtor proposes to provide replacement liens to Commerce Bank equal to the amounts of its cash collateral spent. As shown in the Budget, the Debtor expects to generate revenue in excess of its expenditures, and accounts receivable are not declining in value.

25. Numerous courts have held that a lienholder's interest is adequately protected when it receives replacement liens in property of a value equal to the value of the cash collateral being used). *See, e.g., In re Mullen*, 172 B.R. 473, 476 (Bankr. D. Mass. 1994); *In re Wrecclesham Grange, Inc.*, 221 BR 978, 981 (Bankr. M.D. Fla. 1997).

---

[1] *See In re ProAlert, LLC*, 314 B.R. 436, 443 (BAP 9th Cir 2004) (holding that adequately protected secured creditor's cash collateral may be used to pay professional fees in addition to amounts potentially due under 11 U.S.C. § 506(c)).

Page 6 of 7 – MOTION FOR AUTHORIZATION TO USE CASH COLLATERAL

LEONARD LAW GROUP LLC
4110 SE Hawthorne Blvd., PMB 506
Portland, Oregon 97214
leonard-law.com

Case 23-31368-pcm11    Doc 19    Filed 06/23/23

26. Accordingly, Commerce Bank will be adequately protected by replacement liens.

27. As set forth herein, the Commerce Bank's interest in the Cash Collateral will not decrease in value as a result of the Debtor's use of cash collateral. Accordingly, no payments should be required under 11 U.S.C. § 361(1). Nevertheless, out of an abundance of caution, the Debtor has included in the Budget monthly payments to Commerce Bank of interest only, calculated at the then applicable non-default rates, and has included such payments in the terms of the proposed interim cash collateral order.

## NOTICE

28. The Debtors have provided notice of this Motion to the Debtor's secured creditors, the 20 largest unsecured creditors, the Office of the United States Trustee, the subchapter V trustee, and entities that may assert an interest in the Debtor's cash collateral. The Debtor contends that the such steps constitute good and sufficient notice and that no other or further notice need be given under the circumstances.

## CONCLUSION

29. For the reasons stated herein, the Debtor requests that the Court enter an Order, substantially in the form attached hereto as Exhibit B, granting the relief sought in this motion, and such other and further relief as the Court may deem proper.

DATED: June 23, 2023

LEONARD LAW GROUP LLC

By: /s/ Stephen A. Raher
 Timothy A. Solomon, OSB 072573
 Stephen A. Raher, OSB 095625
Proposed Counsel for Debtor and
Debtor in Possession

Page 7 of 7 – MOTION FOR AUTHORIZATION TO USE CASH COLLATERAL

LEONARD LAW GROUP LLC
4110 SE Hawthorne Blvd., PMB 506
Portland, Oregon 97214
leonard-law.com

Case 23-31368-pcm11    Doc 19    Filed 06/23/23

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

|  |  |
|---|---|
| In re<br><br>**Heritage Specialty Foods, LLC,**<br><br>Debtor. | Case No. 23-<br><br>**INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION** |

This matter came before the Court pursuant to the Debtor's Motion for Authorization to Use Cash Collateral on an Interim and Final Basis (the "**Motion**"). Based on the Motion and the documents submitted in support thereof, including the Declaration of Shane Hendren in Support of First Day Motions, the arguments of counsel, and the records and files herein, it is hereby ORDERED as follows:

1.  On an interim basis pending a final hearing on the Motion, the Debtor is authorized to use cash collateral in which Zions Bancorporation, N.A., doing business as The Commerce Bank of Oregon ("**Commerce Bank**") claims a security interest (the "**Cash Collateral**") in accordance with the terms of this Order to pay costs and expenses incurred by the Debtor in the ordinary course of its business, consistent with the budget attached to this order as Exhibit 1 (the "**Budget**").

2. The Debtor's authority to use Cash Collateral is limited to the amounts set forth in the Budget; provided, however, that the Debtor may make expenditures in excess of said sums so long as cumulative expenses during the period covered by the Budget do not exceed 10% of the total expenses as set forth in the Budget, tested on a monthly basis. Debtor may exceed the 10% variance cap described in the previous sentence only with the prior written consent of Commerce Bank or by a subsequent order of this Court.

3. The Debtor's authority to use Cash Collateral automatically expires upon the Termination Date, as defined below. On the Termination Date, the Debtor's authority to use or spend any further Cash Collateral will automatically terminate unless and until Debtor obtains the written consent of Commerce Bank or a further order of this Court issued after notice and an opportunity for a hearing.

4. The **Termination Date** is defined as the earlier of: _____, 2023, or the failure by the Debtor to comply with any provision of this Order (such failure being an **"Event of Default"**), which failure is not cured within five business days after delivery of notice of such Event of Default by Commerce Bank to the Debtor.

5. As adequate protection for the use of Cash Collateral by the Debtor, Commerce Bank is hereby granted, pursuant to sections 361(2) and 363(e) of the Bankruptcy Code, a perfected lien of the same nature and kind as secured the claims of Commerce Bank on the Petition Date (the "**Replacement Lien**") to secure an amount of Commerce Bank's prepetition secured claim, up to the allowed amounts of such prepetition secured claim, equal to the extent of any diminution in the value of its prepetition collateral ("**Diminution**") by reason of the use of Cash Collateral authorized herein. The Replacement Lien has the same priority as Commerce Bank's prepetition lien, and shall be subject to the same rights and defenses as that prepetition lien. The Replacement Lien does not improve Commerce Bank's position or increase the amount of its allowed prepetition secured claim. The Replacement Lien attaches to all property and assets of the Debtor and its estate of the same kind or nature as Commerce Bank's

Page 2 of 3 – INTERIM ORDER AUTHORIZING USE OF CASH
COLLATERAL AND GRANTING ADEQUATE
PROTECTION

Exhibit A
Page 2 of 3

Case 23-31368-pcm11    Doc 19    Filed 06/23/23

prepetition collateral, whether now owned or hereinafter acquired by the Debtor, and all products, proceeds, rents, issues or profits thereof; provided, however, that the Replacement Lien does not attach to property recoverable or recovered through the exercise of the powers granted under sections 506(c), 544, 545, 547, 548 and 549 of the Bankruptcy Code. Granting this security interest to Commerce Bank is for the sole purpose of providing adequate protection to Commerce Bank to protect its allowed secured claims on the Petition Date and is not intended, nor shall it be deemed, to improve any party's collateral position of as of the Petition Date.

6. The Replacement Lien is in addition to all other security interests and liens securing Commerce Bank's allowed secured claim in existence on the Petition Date. Additionally, nothing in this Order abridges or limits Commerce Bank's security interest in proceeds, products, or profits to the extent provided under section 552 of the Bankruptcy Code.

7. The Replacement Lien shall at all times be senior to the rights of the Debtor and any successor trustee or estate representative in this case or any subsequent cases or proceedings under the Bankruptcy Code.

8. As additional adequate protection, the Debtor shall make monthly payments to Commerce Bank of interest only, calculated at the then applicable non-default rates, based upon the outstanding principal balance of Commerce Bank's secured claim.

9. A final hearing on the Debtor's Motion will be held by this Court on _____, 2023, at _____.

# # #

CERTIFICATION OF COMPLIANCE WITH LBR 9021-1(a)

I certify that I have complied with the requirements of LBR 9021-1(a)(2)(A).

Presented by:

LEONARD LAW GROUP LLC

[*draft proposed order*]
_____

Timothy A. Solomon, OSB 072573
Stephen A. Raher, OSB 095625
Proposed Counsel to Debtor and Debtor in Possession

Page 3 of 3 – **INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION**

Exhibit A
Page 3 of 3

Case 23-31368-pcm11    Doc 19    Filed 06/23/23

**Heritage Specialty Foods**
**Weekly Cash Flow**

| Week ending | Actual 6/25/2023 | 1 7/2/2023 | 2 7/9/2023 | 3 7/16/2023 | 4 7/23/2023 | 5 7/30/2023 | 6 8/6/2023 | 7 8/13/2023 | 8 8/20/2023 | 9 8/27/2023 | 10 9/3/2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales | $ 326,612 | $ 193,590 | $ 208,862 | $ 170,337 | $ 298,078 | $ 354,286 | $ 611,017 | $ 718,432 | $ 630,889 | $ 656,162 | $ 482,994 |
| **Cash Collections:** | | | | | | | | | | | |
|   Sales | $ 58,797 | $ 73,199 | $ 137,667 | $ 321,713 | $ 190,686 | $ 205,729 | $ 167,782 | $ 293,606 | $ 348,972 | $ 601,851 | $ 707,655 |
|   Other Income | - | - | 37,800 | - | - | - | 39,000 | - | - | - | 39,900 |
|   Equity | - | - | - | - | - | - | - | - | - | - | - |
|   DIP Financing (From Members) | 220,000 | 250,000 | - | - | - | - | 250,000 | - | 250,000 | - | - |
|   ERC | - | - | 228,906 | - | 78,752 | 275,473 | 574,602 | - | - | - | - |
| **Total Cash Collections** | $ 278,797 | $ 323,199 | $ 404,373 | $ 321,713 | $ 269,438 | $ 481,202 | $ 1,031,384 | $ 293,606 | $ 598,972 | $ 601,851 | $ 747,555 |
| **Cash Expenditures:** | | | | | | | | | | | |
|   Ingredients | - | (105,668) | (87,077) | (148,722) | (201,379) | (325,270) | (402,621) | (342,150) | (337,217) | (253,650) | (283,393) |
|   Payroll | $ (122,143) | $ (5,029) | $ (133,503) | $ (0) | $ (145,363) | $ (0) | $ (195,808) | $ (0) | $ (225,433) | $ (0) | $ (213,392) |
|   Operating | - | (22,262) | (62,091) | (24,054) | (29,660) | (25,669) | (66,127) | (24,971) | (28,804) | (30,490) | (78,192) |
|   Occupancy & Leases | - | (5,081) | (153,495) | (5,081) | (5,081) | (5,081) | (153,495) | (5,081) | (5,081) | (5,081) | (153,495) |
|   Insurance & Certifications | - | (829) | (829) | (829) | (829) | (829) | (829) | (829) | (829) | (829) | (829) |
|   Taxes | - | - | (765) | - | - | - | (604) | - | - | - | (1,555) |
|   Debt Service, Interest | - | (29,118) | (1,042) | - | - | - | (31,201) | - | - | - | (29,118) |
|   Professional Fees | (90,000) | - | - | - | - | (35,000) | - | - | - | - | - |
|   Accounting | - | - | - | - | - | - | - | - | - | - | - |
|   Priority Vendor Claims | (48,777) | (100,000) | - | (2,693) | - | (71,805) | - | - | - | - | - |
|   Operating Contingencies | - | (6,648) | (14,134) | (8,639) | (18,820) | (17,547) | (33,228) | (18,356) | (29,573) | (14,207) | (28,749) |
| **Total Cash Expenditures** | $ (260,920) | $ (274,637) | $ (452,936) | $ (190,018) | $ (401,132) | $ (481,202) | $ (883,913) | $ (391,388) | $ (626,936) | $ (304,258) | $ (788,723) |
| **Net Cash Flow** | $ 17,877 | $ 48,562 | $ (48,562) | $ 131,694 | $ (131,694) | $ 0 | $ 147,471 | $ (97,782) | $ (27,964) | $ 297,593 | $ (41,167) |
| Beginning Cash | | - | 48,562 | (0) | 131,694 | (0) | 0 | 147,471 | 49,689 | 21,724 | 319,318 |
| Ending Cash | | 48,562 | (0) | 131,694 | (0) | 0 | 147,471 | 49,689 | 21,724 | 319,318 | 278,150 |
| **DIP Financing** | | | | | | | | | | | |
| Beginning Balance | | $ - | $ 250,000 | $ 250,000 | $ 250,000 | $ 250,000 | $ 250,000 | $ 500,000 | $ 500,000 | $ 750,000 | $ 750,000 |
| Borrowings | | 250,000 | - | - | - | - | 250,000 | - | 250,000 | - | - |
| Ending Balance | | $ 250,000 | $ 250,000 | $ 250,000 | $ 250,000 | $ 250,000 | $ 500,000 | $ 500,000 | $ 750,000 | $ 750,000 | $ 750,000 |

| | 11<br>9/10/2023 | | 12<br>9/17/2023 | | 13<br>9/24/2023 | | 14<br>10/1/2023 | | 15<br>10/8/2023 | | 16<br>10/15/2023 | | 17<br>10/22/2023 | | 18<br>10/29/2023 | | Total<br>10/29/2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| $ | 544,627 | $ | 686,614 | $ | 666,679 | $ | 887,613 | $ | 1,041,964 | $ | 799,453 | $ | 594,568 | $ | 727,568 | $ | 10,273,734 |
| | | | | | | | | | | | | | | | | | |
| $ | 621,426 | $ | 646,319 | $ | 475,749 | $ | 536,458 | $ | 676,315 | $ | 656,679 | $ | 874,299 | $ | 1,026,335 | $ | 8,562,440 |
| | - | | - | | - | | - | | 40,800 | | - | | - | | - | | 157,500 |
| | - | | - | | - | | - | | - | | - | | - | | - | | - |
| | - | | - | | - | | 200,000 | | - | | - | | - | | - | | 950,000 |
| | - | | - | | - | | - | | - | | - | | - | | - | | 1,157,733 |
| $ | 621,426 | $ | 646,319 | $ | 475,749 | $ | 736,458 | $ | 717,115 | $ | 656,679 | $ | 874,299 | $ | 1,026,335 | $ | 10,827,673 |
| | | | | | | | | | | | | | | | | | |
| | (453,740) | | (528,226) | | (411,197) | | (317,090) | | (381,272) | | (305,742) | | (311,147) | | (269,156) | | (5,464,717) |
| $ | (34,489) | $ | (238,999) | $ | (0) | $ | (286,986) | $ | (98,249) | $ | (368,433) | $ | (0) | $ | (297,923) | $ | (2,243,607) |
| | (41,414) | | (38,788) | | (39,546) | | (34,351) | | (76,200) | | (40,460) | | (39,862) | | (46,490) | | (749,431) |
| | (5,081) | | (5,081) | | (5,081) | | (153,495) | | (5,081) | | (5,081) | | (5,081) | | (288,330) | | (968,367) |
| | (829) | | (829) | | (829) | | (829) | | (829) | | (829) | | (829) | | (829) | | (14,928) |
| | - | | - | | - | | - | | (2,021) | | - | | - | | - | | (4,944) |
| | (4,167) | | - | | - | | - | | (35,368) | | - | | - | | (6,250) | | (136,264) |
| | - | | - | | - | | - | | - | | - | | - | | (420,000) | | (455,000) |
| | - | | - | | - | | - | | - | | - | | - | | - | | - |
| | - | | - | | - | | - | | - | | - | | - | | - | | (174,498) |
| | (26,482) | | (40,301) | | (22,537) | | (31,921) | | (27,786) | | (35,732) | | (17,550) | | (30,678) | | (422,888) |
| $ | (566,203) | $ | (852,224) | $ | (479,191) | $ | (824,673) | $ | (626,806) | $ | (756,277) | $ | (374,470) | $ | (1,359,656) | $ | (10,634,643) |
| | | | | | | | | | | | | | | | | | |
| $ | 55,223 | $ | (205,905) | $ | (3,442) | $ | (88,214) | $ | 90,308 | $ | (99,598) | $ | 499,829 | $ | (333,321) | $ | 193,030 |
| | 278,150 | | 333,374 | | 127,468 | | 124,027 | | 35,812 | | 126,120 | | 26,522 | | 526,351 | | 193,030 |
| | 333,374 | | 127,468 | | 124,027 | | 35,812 | | 126,120 | | 26,522 | | 526,351 | | 193,030 | | 386,061 |
| | | | | | | | | | | | | | | | | | |
| $ | 750,000 | $ | 750,000 | $ | 750,000 | $ | 750,000 | $ | 950,000 | $ | 950,000 | $ | 950,000 | $ | 950,000 | $ | - |
| | - | | - | | - | | 200,000 | | - | | - | | - | | - | | 950,000 |
| $ | 750,000 | $ | 750,000 | $ | 750,000 | $ | 950,000 | $ | 950,000 | $ | 950,000 | $ | 950,000 | $ | 950,000 | $ | 950,000 |